UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                   Case No. 17-20489

     v.                           Hon. Terrence G. Berg

D-12 TEEAUNA WHITE
D-18 ROBIN HERNDON,

     Defendants.

_____/

**DEFENDANTS' MOTION FOR WRITTEN PROFFER ADDRESSING BASIS FOR ADMISSION OF ALLEGED CO-CONSPIRATOR STATEMENTS AND REQUEST FOR PRE-TRIAL HEARING AND RULING ON ADMISSIBILITY OF THOSE STATEMENTS**

NOW COME TEEAUNA WHITE and ROBIN HERNDON, defendants herein, by and through their counsel, and ask this Court for the entry of an order 1) requiring the government to identify any statements it intends to admit, under MRE 801(d)(2)(E), and the basis for admission, and 2) for a pre-trial hearing and ruling on the admissibility of any/all of the statements identified by government in its written proffer, and for their reasons, rely on the attached memorandum brief.

On June 19, 2023, undersigned counsel, Allison Kriger, sought concurrence from the government in the relief requested. On June 21, 2023, Attorney Kriger and Assistant United States Attorney Craig Wininger conducted a teleconference, during which concurrence was denied.

1

Respectfully Submitted,

*s/Allison L. Kriger*                                      *s/ Winston Kevin McKesson*
ALLISON L. KRIGER                              WINSTON KEVIN MCKESSON
La Rene & Kriger, PLC                           Counsel for Mr. Herndon
645 Griswold, Suite 1717
Detroit, MI 48221
(313) 967-0199
Allison.kriger@gmail.com
Michigan Bar No. P76364


DATED: June 23, 2023

UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                      Case No. 17-20489
   v.                                  Hon. Terrence G. Berg

D-12 TEEAUNA WHITE,

       Defendant.
_____/

**MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR WRITTEN PROFFER REGARDING ALLEGED CO-CONSPIRATOR STATEMENTS AND REQUEST FOR PRE-TRIAL HEARING AND RULING ON ADMISSIBILITY OF ALLEGED CO-CONSPIRATOR STATEMENTS**

In its trial brief [ECF No. 591], filed in advance of the parties' previously scheduled trial (November 16, 2022), the government, in pertinent part, stated its intention to admit "text communications" and "verbal statements" that the government contends are made by co-conspirators. ECF No. 591, PageID.4795-96. In its brief, the government provided two examples:

1.  On July 29, 2017, Co-conspirator A complained in a text that "pooidie," an individual who will be identified as Tyler Jackson, aka Pootie, did not pay him/her. Co-conspirator B asked "[d]id he send you all out there with money I know we have to pay u for moveing for Poodie." Co-conspirator A replied, "we did talk to Loc already."; and

2.  Jail calls between Allen Hayward and Maurice McCoy. [Transcripts of the calls are forthcoming].

3

In its list of proposed exhibits, the government identified other out-of-court statements offered for their truth:

1. Andre Scott's phone content [Exh. A.1 and A.2];

2. Joyce Haynes' phone content [Exh. B];

3. Shawn Oliver's phone content [Exh. C];

4. Maurice McCoy phone content [not yet received from the government];

5. James McGlory's phone content [Exh. D];

6. Allen Hayward phone content [Exh. E]; and

7. Text messages between Ms. White and her sister, Delijha White [Exh. F].

The government should be precluded from admitting the above-listed statements, as they do not meet the admissibility requirements set forth in *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978).

Further, to the extent the government seeks the admission of additional alleged co-conspirator statements, it should be required to identify those statements and explain the basis for their admissibility – i.e. how those statements meet the three *Enright* factors. And, to guard against the improper admission of hearsay statements, and, in turn, a potential mistrial, defendants ask this Court to rule on the admissibility of those statements in advance of trial.

## RELEVANT FACTS

Having presided over this indictment for approximately six years, this Court

4

is well acquainted with the facts. Those need not be repeated in full here. Relevant to this motion, Ms. White and Mr. Herndon are charged with conspiracy to commit money laundering. Essentially, it is alleged that from 2014 through September of 2019, they conspired with each other, James McGlory, Maurice McCoy and others to launder monetary instruments or engage in monetary transactions in property derived from drug trafficking, or both, and which White and Herndon knew was proceeds from drug dealing. Neither White nor Herndon are charged or alleged to be involved in the underlying drug conspiracy.[1]

## LAW AND ARGUMENT

Fed. R. Evid. 801(d)(2)(E) permits the introduction of an out-of-court statement **"by the party's coconspirator during and in furtherance of the conspiracy."** Before the government may take advantage of this rule, however, Fed. R. Evid.104 requires the government to prove, and this Court to find, by a preponderance of the evidence that:

1. A conspiracy existed,

2. the defendant against whom the hearsay is offered was a member of that particular conspiracy at the time the statement was made, and

3. the statement was made by a co-conspirator in the course and in furtherance of that particular conspiracy.

*See United States v. Hamilton*, 689 F.2d 1262, 1268 (6th Cir. 1982); *U. S. v. Enright*,

---

[1] Additional facts will be included below as needed.

5

579 F.2d 980 (6th Cir. 1978)).

To prove the existence of a conspiracy, the prosecution must establish that there was: (1) an object to be accomplished, (2) a plan or scheme embodying means to accomplish that object, and (3) an agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means. *United States v. Lopez-Medina*, 461 F.3d 724, 747 (6th Cir. 2006).

As the Sixth Circuit Court of Appeals put it:

Mere association does not establish a conspiracy, but there must be intentional participation in the transaction with a view to the furtherance of the common design and purpose. If, in Judge Learned Hand's well-known phrase, a man is to be held for joining others in a conspiracy, "he must in some sense promote their venture himself, make it his own, have a stake in its outcome. The distinction is especially important today when so many prosecutors seek to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders. That there are opportunities of great oppression in such a doctrine is very plain, and it is only by circumscribing the scope of such all comprehensive indictments that they can be avoided.

A connection must be based on proof of the conspiracy alleged. Where one conspiracy is specifically charged, proof of different and disconnected ones will not sustain a conviction. To allege against a number of persons generally that they have conspired to cheat and defraud does not enable the prosecution to prove several conspiracies each affecting different contracts and different persons or groups of persons interested in the contracts, unless all the contracts and the wrong purposes in respect of them form parts of the same combination.

6

*United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973).

With respect to the next two factors, the government must show that it is more likely than not that the defendant against whom the statement is offered was a member of an alleged conspiracy *at the time the statement was made*, and the statement at issue was made during and in furtherance of *that* conspiracy. In other words, the statement offered *must* have "intended to promote conspiratorial objectives" and "advance the aims of the alleged conspiracy" in which the defendant and the declarant are alleged to be members, rather than some other conspiracy. *Hamilton*, 689 F.2d at 1270.

Requiring the government to prove the statement "intended to promote conspiratorial objectives," *Hamilton*, *supra* 1270, and "advance the aims of the alleged conspiracy," *U.S. v. Eubanks*, 591 F.2d 513, 520, 4 Fed. R. Evid. Serv. 266 (9th Cir. 1979), "protect[s] the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence." Kenneth M. Mogill, Lia N. Ernst, Allison L. Kriger, Morgan Schut, Examination of Witnesses, § 11.37, 2d ed, 2022-2023.

Thus, admissions or confessions by a co-conspirator that are merely descriptive and were not intended to lure the listener into or otherwise promote the conspiracy are inadmissible. *Id*; see also *United States v. Warman*, 578 F.3d 320,

338 (6th Cir. 2009) ("mere idle chatter or casual conversation about past events is not considered a statement in furtherance of the conspiracy.")

1. **Hayward/McCoy calls and Hayward phone content, Joyce Haynes phone content, Shawn Oliver phone content, Andre Scott phone content, James McGlory phone Content, and Maurice McCoy phone content.**

The calls between Hayward and McCoy occurred in November of 2015, and the text messages in Hayward's phone are dated August of 2015. There is no evidence – let alone a preponderance – that at the time of the calls, Ms. White or Mr. Herndon had anything more than a mere association with McCoy or any other members of the conspiracy alleged.

According to bank records, Ms. White made what could arguably be her first structured deposit in November of 2016. According to the indictment, she made her first notable purchase in December of 2015: a 2005 Bently.

There is no evidence of Mr. Herndon's involvement until 2017.

Additionally, to the extent these messages are related to a money laundering conspiracy, they could only be related to and in furtherance of promotional money laundering under 18 U.S.C. § 1956. Although Ms. White and Mr. Herndon are charged, in the alternative, with promotional money laundering, the government cannot establish by a preponderance of independent evidence that they actually engaged in promotional money laundering. Or, put another way, a preponderance of the evidence does not show that they "intentionally participat[ed] in [any]

transaction with a view to the furtherance of the common design and purpose" to promote drug trafficking. *Bostic*, *supra*.

It goes without saying that the fact that Defendants are *charged* with promotional money laundering is not independent evidence of their participation in a conspiracy. If it was, the requirements set forth in *Enright*, *supra*, would be superfluous.

The same argument applies to communications contained in Haynes, Oliver, Scott, and McGlory's phones. If anything, these communications evidence a separate conspiracy between Haynes, Oliver, Scott, and McGlory with a separate "wrong purpose." *Id*.

**2. Text messages between Delijha White ("Lee Lee") and Teeauna White**

The government included in its exhibit list, text messages between D. White and T. White regarding D. White's flight from Detroit to LAX with her then-romantic partner Jazzqueen Oates and Manjaro Johnson. The messages further discuss D. White reimbursing T. White for the flights.

During a teleconference on June 21, 2023, the government, for the first time in four years, claimed that Defendant White's sister is an unindicted co-conspirator. The is no evidence of this independent of the ambiguous text messages at issue and the single flight from Detroit to Los Angeles. This is substantiated by the fact that the government has never previously mentioned this theory, nor did it seek to admit

the messages at the November 16, 2022 trial, and, in an email sent on June 23, 2023, the government conceded that there is no independent evidence of Delijha White's involvement in a conspiracy.

This is a classic example of the situation Judge Hand admonished: "prosecutors seek[ing] to sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the main offenders." *Bostic*, *supra*. These messages are illustrative of that. In light of this, defendants ask this Court to proceed with caution, and to the extent the government seeks to admit other out-of-court statements under Fed. R. Evid. 801(d)(2)(E) – including through the testimony of the cooperating witnesses – the government should be required to identify those statements in writing and explain the basis for their admissibility using the *Enright* factors. This will "protect[ the defendants'] legitimate concerns about hearsay statements by ensuring some level of review before the statements are put before the jury." *United States v. Bell*, No. 17-CR-20183, 2020 WL 7041182, at *4 (E.D. Mich. Dec. 1, 2020) (Goldsmith, J.)

And, as this Court has previously observed there are several benefits to pretrial rulings on the admissibility of evidence – particularly where, as here, the evidence, with the exception of the cooperating witnesses[2], is purely circumstantial and

---

[2] Of course, as the jury will be instructed, the cooperators' testimony must be viewed with more caution than the testimony of other witnesses. Sixth Circuit Pattern Instruction 7.07 Testimony of a Witness Under Grant of Immunity of Reduced

presents "reasonable probabilities" of equal weight, one innocent and the other criminal," *United States v. Campion*, 560 F.2d 751, 753–54 (6th Cir. 1977), and the trial (on a single count for two defendants) is estimated to be quite lengthy:

> A formal mechanism for obtaining advance rulings on the admissibility of evidence would seem to serve at least the following ends: (i) facilitate trial preparation by providing information pertinent to strategic decisions; (ii) reduce distractions during trial and provide for a smoother presentation of evidence to the jury; (iii) enhance the possibility of settlement of disputes without trial; (iv) provide some additional insulation of the jury from prejudicial inadmissible evidence; and (v) improve the conditions under which the trial judge must address evidence issues by reducing the need for hasty decisions during the heat of trial.

*Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) (Lawson, J.) (quoting Report of Kentucky Study Committee, 1989, p. 5, quoted in Lawson, The Kentucky Evidence Law Handbook, pp. 33–34 (3d ed.1993)).

The purported co-conspirator statements are, arguably, the strongest evidence in this case, and, thus, their erroneous admission would not be harmless error. See *Schrand v. Fed. Pac. Elec. Co*., 851 F.2d 152, 157 (6th Cir. 1988), abrogated on other grounds by *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) (finding reversible error where inadmissible evidence was "arguably ... the strongest evidence in [the opposing party's] favor at trial.") After

---

Criminal Liability

one emergency trial adjournment, through no fault of their own, Defendants, after four years of being under indictment, would like to avoid a mistrial predicated upon the erroneous admission of hearsay evidence.[3]

## CONCLUSION

For the reasons set forth above, defendants ask that this court enter an order 1) requiring the government to identify out-of-court statements it seeks to admit at trial under Fed. R. Evid. 801(d)(2)(E) and explain the basis for their admission using the *Enright* factors, and 2) for a pre-trial hearing and ruling on the admissibility of the statements identified by government in its written proffer.

Respectfully Submitted,

s/Allison L. Kriger_____          s/ Winston Kevin McKesson_____
ALLISON L. KRIGER                        WINSTON KEVIN MCKESSON
La Rene & Kriger, PLC                    Counsel for Mr. Herndon
645 Griswold, Suite 1717
Detroit, MI 48221
(313) 967-0199
Allison.kriger@gmail.com
Michigan Bar No. P76364


DATED: June 23, 2023

---

[3] The government has identified a handful of phones with statements that are purportedly relevant to this trial. With only three cooperating witnesses, the burden to the government does not seem to outweigh the danger of affecting defendants' substantial rights.