UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES**, <br><br> Plaintiff, <br><br> v. <br><br> **TEEAUNA WHITE,** et al., <br><br> Defendants. | 2:17-CR-20489-TGB-EAS <br><br> HON. TERRENCE G. BERG <br><br><br> **ORDER RESOLVING MOTIONS IN LIMINE** |

Before the Court are a series of motions in limine filed by both parties seeking to preclude or allow the use of various kinds of evidence, to strike allegations in the indictment, or to seek other pre-trial rulings in connection with this long-pending trial regarding a nation-wide drug trafficking and money laundering conspiracy. The leader of the drug organization, Defendant Maurice McCoy, along with some 15 other leaders, distributors, couriers, and facilitators, have already entered guilty pleas.

The remaining two defendants are McCoy's girlfriend, Defendant Teeauna White, and Robin Herndon, another alleged member of the conspiracy. Both are charged with a single count of Conspiracy to Launder Monetary Instruments under 18 U.S.C. § 1956(h). The Court will address each of the pending motions below.

1

# I.   ANALYSIS

## a. Defendants' motion to strike allegations about specific drug seizures from the indictment (ECF No. 693)

Defendants move to strike Paragraph 4 and its two subparts from the Tenth Superseding Indictment. Those paragraphs read as follows:

> 4. Members of the [Drug Trafficking Organization] set up locations to store cash generated from the sale of controlled substances before it was returned to California. They used the same locations to store controlled substances. At times, law enforcement seized cash and controlled substances at these locations. This included:
>
> A. Five hundred fifteen thousand seven hundred and ten dollars ($515, 710) United States Currency, with approximately ten kilograms of fentanyl, more than 20 kilograms of a mixture of fentanyl and heroin, and approximately 700 grams of tramadol on July 10, 2017, from a condominium at 42284 Joyce Lane, Novi, MI and 991 grams of cocaine from a vehicle rented by a member of the drug distribution conspiracy that was parked in front of the condominium.
>
> B. One hundred thirty-eight thousand seven hundred and forty-nine dollars ($138,749) United States Currency, with approximately three kilograms of fentanyl, 14 kilograms of cocaine, and 90 grams of heroin, on April 13, 2018, from Apartment I at 6603 English Oak Road in Baltimore, Maryland.

Defendants say that this information is not essential to the money laundering conspiracy count and is needlessly prejudicial given the

quantities of drugs and the general bad reputation of cocaine and fentanyl. They also point out that this language was not present in the previous Ninth Superseding Indictment.

Fed. R. Crim Pro. 7(d) authorizes a court to strike "nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir.1974). But Rule 7(d) has been "strictly construed against striking surplusage." *Id.* "If the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (citation omitted).

Defendants admit that the government must prove that the money involved in this case was the proceeds of the sale or distribution of controlled substances. But they argue that the specific quantities and types of drugs are immaterial to the elements of the money laundering charge. ECF No. 693, PageID.6716.

The Court will not strike the language at issue. According to the charges in this case, the purpose of the defendants' money laundering scheme was to launder the proceeds of the drug trafficking organization. It is relevant for the allegation to specify the amount and types of drugs because it is directly related to the amount of money that the scheme generated. That, in turn, is relevant to the methods used to allegedly launder it. *See United States v. Bucey*, 691 F. Supp. 1077, 1081 (N.D. Ill.

1988) ("[t]he evidence of the allegedly illegitimate source of the funds at issue is also relevant with regard to explaining the purpose behind the money laundering scheme."). Finally in any event, because the Court will instruct the jury that the indictment is not evidence but is merely allegations, there is little risk that the jury will give the charges undue weight. This motion is therefore denied.

### b. Motion for a proffer identifying all co-conspirator statements (ECF No. 694)

The government seeks to admit a number of otherwise hearsay statements—text messages and calls—under Federal Rule of Evidence 801(d)(2)(E). Rule 801 allows the admission of statements that would otherwise be hearsay if they are made by a party's coconspirator in furtherance of the conspiracy.

To satisfy Rule 801(d)(2)(E), the government must prove three things by a preponderance of evidence: that (1) a conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the co-conspirator made the statement in furtherance of the conspiracy. *United States v. Warman*, 578 F.3d 320, 335 (6th Cir. 2009). The Court's finding that all three elements are met is often referred to as the "*Enright*" finding. *See United States v. Enright*, 579 F.2d 980 (6th Cir. 1978).

i. The proper method for determining the admissibility of co-conspirator statements

There are several methods a court can use to conduct the *Enright* analysis, and the parties disagree about which should be used. There are

4

generally three methods of determining whether the government has met this burden, as explained by the Sixth Circuit in *United States v. Vinson*, 606 F.2d 149, 152-53 (6th Cir. 1979). First, the court may conduct a pretrial "mini-hearing" at which the court hears witnesses and receives evidence without a jury. *Id.* Second, the court may require the government to present at trial the non-hearsay evidence of the conspiracy first prior to making the *Enright* finding. *Id.* Third, the court may conditionally admit the statements subject to a continuing objection and rule on the objection at the close of the government's case-in-chief. If the government has met its burden, the evidence may go to the jury. If it has not, the court generally must then declare a mistrial.

Conducting the contemplated "mini-hearing" has been criticized in *Vinson* and more recent cases as "burdensome, time-consuming and uneconomic," because the evidence heard at the hearing will generally overlap entirely with the evidence adduced at trial. *Id.* And the second method does not allow the court to consider the statements themselves as part of the inquiry. For those reasons, the third approach is generally favored in this district and in the Sixth Circuit more broadly.[1]

---

[1] Defendants quibble with some of the government's cited cases. But the third *Vinson* method is the "general practice" in this Circuit. *United States v. Driver*, Case No. 09-20549, 2011 WL 761496, at *6 (E.D. Mich. Feb. 25, 2011); *see also United States v. Norwood*, Case No. 12-20287, 2014 WL 1795560, at *2 (E.D. Mich. May 6, 2014) (collecting cases); *United States v. Coffman*, Case No. 09-181, 2010 WL 3924671, at *3 (E.D. Ky. Sept. 29, 2010) (collecting cases).

Defendants suggest that the Court order the government to produce a written proffer of all coconspirator statements it intends to admit at trial. This, Defendants say, will allow the Court to make an informed decision on which of the three methods discussed above is most appropriate.

Requiring a pre-trial proffer is not unheard of in this district. *See, e.g.*, *United States v. Norwood*, Case No. 12-20287, 2014 WL 1795560, at *3 (E.D. Mich. May 6, 2014) (requiring pretrial proffer of evidence supporting existence of a conspiracy); *United States v. Mills*, Case No. 16-20460, 2019 WL 77032, at *4 (E.D. Mich. Jan. 2, 2019) (same).

But the Court declines to order such a proffer here. As another court in the Sixth Circuit has observed, requiring a proffer would still impose a significant burden on the government in producing the proffer and the court and defense in reviewing it. And it would further inject delay on the eve of trial in a case that has been pending for more than five years. Accordingly, the Court declines to order a proffer. *See, e.g.*, *United States v. Taylor*, Case No. 21-00013, 2022 WL 16943840, at *3 (E.D. Ky. Nov. 14, 2022); *United States v. Ledesma*, Case No. 19-20216, 2020 WL 7075289, at *2 (E.D. Mich. Dec. 3, 2020).

And, moreover, the limited evidence appended to the various motions and responses in this case, including the extensive evidence of drug seizures and attempts to move or otherwise conceal the source of drug money, suggests the existence of a conspiracy. *See, e.g.*, *United*

6

*States v. Schwartz*, Case No. 19-20451, 2021 WL 5233291, at *3 (E.D. Mich. Nov. 10, 2021) ("Reviewing the limited evidence cited by the government in its briefing . . . it appears probable that the government will be able to present enough evidence demonstrating the existence of a conspiracy[.]").

In any event, Defendants are not without protection. The statements will be admitted on a conditional basis only. If the government fails to bear its burden to prove the existence of a conspiracy—in which the defendants participated—by a preponderance of the evidence, the appropriate result under *Vinson* is to declare a mistrial on the defense's motion.

    ii. <u>Whether any statements must be excluded before trial</u>

Defendants raise two bases to exclude the statements identified in their motion. First, Defendants contend that co-conspirator statements are only admissible under Rule 801(d)(2)(E) against a person who was a member of the conspiracy when the statement was made.

There is admittedly some confusion on this point. In *Enright*, the Sixth Circuit appeared to adopt the rule then followed in the First Circuit: "if it is more likely than not that the declarant and the defendant were members of a conspiracy *when the hearsay statement was made*, and that the statement was in furtherance of the conspiracy, the hearsay is admissible." *Enright*, 579 F.2d at 986 (quoting *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977) (emphasis added). And recent

cases, including those cited by Defendants, repeat this "when the hearsay statement was made" language from *Enright. See, e.g.*, *United States v. Castro*, 960 F.3d 857, 867 (6th Cir. 2020); *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008).

But the timing of the co-conspirator's statement was not dispositive in any of those recent cases. And that rule appears to conflict with the Supreme Court's holding that once a conspiracy is established, "the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 393 (1948).

Despite continuing to use the language borrowed from *Petrozziello* in recent decisions, the Sixth Circuit has unambiguously held that a co-conspirator's statement is still admissible against a defendant even if he or she joined the conspiracy after the statement was made.[2] In *United States v. Cassity*, the Sixth Circuit explained that this language was "mere dictum and does not represent the law of this Circuit." 631 F.2d 461, 464 (6th Cir. 1980). Later decisions are in accord. *See, e.g.*, *United*

---

[2] Later decisions of the First Circuit also rejected *Petrozziello. See United States v. Goldberg*, 105 F.3d 770, 775 (1st Cir. 1997) (rejecting *Petrozziello* as inconsistent with Supreme Court precedent and describing the traditional rule that "a conspiracy is like a train, and when a party steps aboard, he is part of the crew, and assumes conspirators' responsibility for the existing freight") (cleaned up)

*States v. Lewis*, 816 F.2d 683 at *4 (6th Cir. 1987) ("[a]n otherwise admissible declaration of one coconspirator is admissible against members of the conspiracy who joined after the statement was made.") (citation omitted) (unpublished table opinion); *United States v. Bartholomew*, 310 F.3d 912, 921 (6th Cir. 2002).

This rule makes sense because the charge that must be proven is an on-going conspiracy. A co-conspirator's statement showing the existence of the conspiracy is probative of that charge even if a person joins the conspiracy after the statement was made. Accordingly, statements in support of the alleged conspiracy made before White and Herndon allegedly joined it are nonetheless admissible in this trial against them to prove the existence of the conspiracy.

Defendants' second argument is that "the government has not shown by a preponderance of the evidence" that White and Herndon were members of the "particular conspiracy" in which the identified witnesses participated. ECF No. 703, PageID.6894. But that does not persuade.

First, co-conspirator's statements may be admitted even "where the conspiracy charged is not as broad as the conspiracy which forms the basis for admissibility of the statement[.]" *United States v. Stone*, Case No. 10-20123, 2011 WL 17613, at *3 (E.D. Mich. Jan. 4, 2011) (citing *United States v. Green*, 600 F.2d 154, 157 (8th Cir.1979)). So even though these co-conspirators are not charged in the indictment, they still may be members of the same conspiracy as White and Herndon. Or,

alternatively, White and Herndon may be members of the drug trafficking conspiracy, despite not being charged as such.

But more critically, exclusion is not warranted because the government need not prove the existence of a conspiracy before trial. As detailed in the above section, the co-conspirators' statements will be conditionally admitted and the Court will make its *Enright* determination at the close of the government's case. For co-conspirator statements to be admissible, the government will need to show that they were made in furtherance of the particular conspiracy that these two defendants joined. Nothing in this Order prevents the Defendants from raising objections to individual co-conspirator statements before they are offered if Defendants have a good faith basis to believe that the statements were not made by a co-conspirator of the Defendants, or were not in furtherance of the money laundering conspiracy.

### c. **Defendants' amended motion to exclude certain evidence (ECF No. 695)**

#### i.  A cooperating witness' testimony

Defendants ask the court to preclude a cooperating witness from testifying.[3] They say that the witness was arrested in October, 2015, and that the witness's involvement in the conspiracy terminated in mid-to-late 2015. They say that the earliest evidence of White's involvement in

---

[3] The witness is identified by name in Defendants' sealed motion but is anonymized in the government's submission. The Court will refer to the witness as "the cooperating witness."

the conspiracy was in December 2015, and Herndon in 2017. Therefore, they say, the witness's participation in the conspiracy did not overlap with their own.

As discussed above, co-conspirators' statements made before a defendant joins a conspiracy are still admissible. And, similarly, the government need not prove before trial that the defendants and the cooperating witness participated in the same conspiracy. So the testimony of the cooperating witness and certain records showing an association between White, McCoy, and that witness need not be excluded now.

ii.   Evidence of McCoy's flight

The government at one time sought to introduce evidence that Ms. White had "harbored" McCoy after he was indicted. The parties have agreed that this is no longer at issue; the government will not seek to introduce such evidence.

iii.   Expert testimony of DEA Agent Jeremy Fitch, IRS agents Newsome and Scartozzi

1. Agent Fitch

Defendants say that the testimony of DEA agent Jeremy Fitch about the practices of drug dealers should be excluded because these defendants are not charged with any drug counts.

Defendants point to a Ninth Circuit case, *United States v. Pablo Varela-Rivera*, 279 F.3d 1174 (9th Cir. 2002). There, the Ninth Circuit held that it was reversible error to allow extensive testimony about the

11

structure and methods of drug trafficking conspiracies, including the fees typically paid to drug couriers because the defendant was not charged with conspiracy to distribute drugs. *Id.* at 1179. That information could have allowed the jury to conclude that the defendant was part of a large drug network, even though he was not charged with conspiracy and there was little evidence of his involvement with a larger enterprise or that a larger enterprise existed at all.

And as the government points out, the Ninth Circuit has explained that the limitation expressed in *Varela-Rivera* does not apply in cases "which involve a defendant accused of involvement in a complex drug conspiracy." *United States v. Ogedengbe*, 187 F. App'x 715, 716 (9th Cir. 2006). Even though these two defendants are not charged with drug trafficking, there is ample evidence of a wide-ranging drug conspiracy. There was no such evidence in *Varela-Rivera*. Although White and Herndon are not charged as part of the drug conspiracy, it is still inextricably intertwined with the money laundering conspiracy.

Defendants also point to *United States v. Cruz*, in which the Second Circuit held that "the credibility of a fact-witness may not be bolstered by arguing that the witness's version of events is consistent with an expert's description of patterns of criminal conduct[.]" 981 F.2d 659, 663 (2d Cir. 1992). There, a witness testified to an intermediary's role in a drug dealing arrangement. The government then presented a law enforcement expert who testified that the fact witness's account was in

keeping with typical drug distribution schemes. This was improper bolstering, as it suggested to the jury that the expert witness believed the government's fact witness and believed the defendant to be guilty. *Id.* The Second Circuit explained that the expert's testimony "add[ed] nothing" to the believability of the fact witness's account. *Id.*

Despite considering the case a few times, the Sixth Circuit has never adopted *Cruz. See, e.g.*, *United States v. Dalton*, 574 F. App'x 639, 642 (6th Cir. 2014); *United States v. Reynolds*, 534 F. App'x 347, 364 (6th Cir. 2013); *United States v. Smith*, 601 F.3d 530, 540 (6th Cir. 2010). In *Dalton*, the most recent case to consider the issue, the Sixth Circuit explained that, even if *Cruz* applied, there had been no error. Unlike in *Cruz*, the Sixth Circuit explained, defendant's theory of the case in *Dalton* attacked the fact witness' testimony as not credible. *Dalton*, 574 F. App'x at 642-43.

Here, the principal defense appears to be that White and Herndon's conduct has an innocent explanation. That is precisely the carveout the Second Circuit identified in *Cruz*: the court of appeals limited its decision to situations in which "witness's version is not attacked as improbable or ambiguous evidence" of criminal activity. *Cruz*, 981 F.2d at 663.

*Smith* offers another possible basis for admission. There, the Sixth Circuit explained that a law enforcement expert's testimony was permissible because there was no dispute that the drug trafficking organization at issue existed; the expert merely "attempted to clarify the

role played by" the defendants "within that organization." *Smith*, 601 F.3d at 540. That would also be a permissible purpose for Fitch's testimony. But if Fitch, or any other government witness, attempts to offer expert testimony that seeks to bolster another fact witness's testimony, the defense may interpose an objection which would be likely to be granted. For now, however, Fitch's testimony need not be excluded.

### 2. IRS Agents Newsome and Scartozzi

Defendants say that the IRS agents' testimony about the legality of certain transactions should be excluded because it goes to the ultimate issue. They also contend that allowing both Newsome and Scartozzi to testify would lead to needless repetition. The government agrees that it may not introduce testimony from Newsome or Scartozzi that goes to the ultimate issue.

In the Sixth Circuit, an expert may not testify to the ultimate issue—that certain conduct violates the law. *In re Air Crash Disaster*, 86 F.3d 498, 523 (6th Cir. 1996). In a money laundering case, an expert may not testify that certain transactions were done with the intent to conceal the true nature of funds. *United States v. Warshak*, 631 F.3d 266, 324 (6th Cir. 2010). An expert also many not testify that the "design" of a transaction was to violate the law, because "[t]o say that a transaction is designed to achieve a certain effect is tantamount to declaring that the individual who conducted the transaction intended to achieve that outcome." *Id.*

14

But an expert is allowed to testify that the *effect* of a transaction was to conceal the true nature or source of funds. *Id.* And an expert may testify about the typical practices employed by money launderers. *Smith*, 601 F.3d at 540.

With the above principles in mind, Mr. Scartozzi may not offer his suggested testimony on the ultimate issue of whether "specific transactions . . . *were structured* in his opinion to avoid a reporting requirement or done in an *effort* to disguise" the source of funds, or that certain transactions "violated the spending statute." Gov't. Trial Br., ECF No. 591, PageID.4807-08 (emphasis added). But Scartozzi may testify to the typical practices of money launderers and to the other items identified in the government's response: reporting requirements imposed on banks and other businesses, the self-imposed anti-money laundering tools employed by banks, and the like. *See* ECF No. 699, PageID.6841-42. The government witnesses may not testify as to the intent or purpose of the defendants, or opine on the ultimate issue of whether the Defendants' conduct violated the law, but they may identify transactions in amounts that would avoid the reporting requirement and testify to the effect of avoiding those requirements.

Defendants also argue that Newsome and Scartozzi will offer duplicative accounts of the same evidence, which would waste the jury's time and raise the possibility that jurors might merely resolve disputed expert testimony by "counting heads." *See* ECF No. 695, PageID.6799.

The government responds that Scartozzi and Newsome will testify about different things. Newsome will speak to the financial evidence gathered in this particular case, while Scartozzi will offer the expert testimony described above. The government says that any overlap between their testimony will be minimal and incidental. Accordingly, both witnesses may testify. Concerns about the jury "counting heads" can be mitigated by an appropriate instruction.

### iv.   Evidence of McCoy's prior drug trafficking conviction

The government seeks to introduce evidence of McCoy's prior drug conviction to show that White knew that McCoy was involved with drug activity. White contends that this would amount to impermissible character evidence prohibited by the Federal Rules of Evidence. Rule 404(b)(1) prohibits evidence of a person's past criminal behavior "in order to show that on a particular occasion the person" behaved criminally. But evidence of a criminal conviction is admissible for other purposes, such as proving intent or knowledge. Fed. R. Evid. 404(b)(2).

The government maintains that it is not offering evidence of McCoy's prior conviction to prove that McCoy acted criminally. Rather, the government says, it will introduce evidence that White knew McCoy had been convicted of drug offenses. The government argues that this tends to prove that White knew or should have known that the large sums of money moving through her accounts was derived from drug dealing.

16

White argues that the government's argument is fatally flawed because the sums of money in White's accounts could be explained by her legitimate business ventures. But that is a matter of credibility for the jury to weigh; the evidence will not be excluded merely because there is an alternate, innocent explanation. White also argues that she did not know McCoy when he was previously dealing drugs. ECF No. 703, PageID.6899. But what is probative of her knowledge of and participation in the current money laundering scheme is whether White knew of McCoy's conviction when the alleged drug money was moving through her bank accounts. Accordingly, McCoy's prior conviction has probative value.

McCoy has pled guilty. He will not be going to trial alongside White. Moreover, at least some evidence of drug trafficking will be admitted in this case. McCoy's prior conviction for drug dealing hardly any more prejudicial than other evidence of McCoy's participation and leadership of the DTO, which is likely to be admitted.

Rule 404(b) also requires the government to provide notice that it intends to introduce prior bad-act evidence. White says that the government failed provide proper notice, but does not explain what the government failed to do. The government says that it notified the Defendants of its intent to offer evidence of McCoy's prior conviction when it filed its trial brief before the trial date that was previously set in this case. *See* ECF No. 591, PageID.4801-802. That brief was filed eight

months ago. That is ample notification and, indeed, Defendants' present motion shows that they have had a chance to object to the admission of this evidence. *See, e.g., United States v. Paul*, 57 F. App'x 597, 607 (6th Cir. 2003) (notice requirement met where government discussed evidence in response to defendant's motion in limine one week before trial).

> v.   <u>Evidence obtained from White's iCloud account</u>

White asks the Court to exclude several categories of evidence obtained from her iCloud account.

> *1. Jewelry and other unexplained wealth evidence*

White asks the court to exclude certain pictures and videos of McCoy wearing jewelry, displaying large amounts of cash, and driving expensive cars. She says they should be excluded as unduly prejudicial. She also argues that allowing this evidence in would allow the government to play to class bias.

Evidence of unexplained wealth is admissible, so long as the government can show that the defendant does not have a legitimate source for the income. *United States v. Stuckey*, 253 F. App'x 468, 481 (6th Cir. 2007). Defendants argue that the wealth was legitimately obtained from their music and event promotion businesses. But that raises a question of fact to be determined by weighing evidence. *United States v. Cardena*, 842 F.3d 959, 984 (7th Cir. 2016) ("A dispute as to the legitimacy of the [source of funds] goes to the weight, not the admissibility of the government's unexplained-wealth evidence.").

18

Accordingly, photographs and/or videos of the jewelry, cash, and cars may be admitted.

Defendants also argue that the jewelry videos are needlessly cumulative and that they are not evidence of unexplained wealth because there is no evidence of the jewelry's price. The Court has reviewed the four video clips the government seeks to introduce, each of which is only seconds-long. Each video focuses on a different aspect of the jewelry and is probative as alleged evidence of drug proceeds, as would be videos depicting large amounts of cash. Given their short duration, the videos will not waste trial time or be needlessly cumulative. As for the lack of evidence about the jewelry's price, that is true, but at the same time, in one of the videos McCoy and White can be heard referring to "diamonds" and, in any event, the question of the jewelry's precise value goes to the weight, not the admissibility of this evidence.

Defendants also seek to exclude pictures of McCoy wearing jewelry and sitting in a Bentley, as well as pictures from White's Instagram account of White in front of expensive cars or on vacation. They also seek to exclude records of White's stay at the Fontainbleu Hotel in Miami. The same analysis applies to these records as applies to the other unexplained wealth records, and they will also be admitted.

## 2. White's search history

Defendants seek to exclude evidence that White searched for news articles about a raid in Detroit targeting codefendant Andre Scott and for

the Blue Book value of a Cadillac Escalade formerly owned by Scott.[4]
Defendants say that this evidence is misleading because it ignores the
context—Scott's romantic relationship with White's sister. Thus, there
could have been an innocent explanation for White's search for this
information. But Defendants are entitled to present this context and
argue in favor of an innocent explanation—that is no reason to exclude
the evidence.

### 3. Purportedly ambiguous text messages and pictures of McCoy with others

Defendants say that there could be no basis to introduce pictures of
McCoy with other people or messages between White and others. The
government now explains the purpose of that evidence.

The photographs of McCoy and others are being offered to show a
connection between McCoy and those alleged co-conspirators. The texts
between White and her sister and White and another contact, "Momma
G," are offered to prove her participation in the conspiracy. Her messages
to Momma G refer to a raid conducted in Detroit, and are relevant as
evidence of her knowledge or involvement in drug trafficking and/or
money laundering. Her messages with her sister appear to refer to bank
accounts used to structure transactions. Those messages may be

---

[4] The government says that "the evidence at trial will show that [the
Escalade] originally belonged to one of McCoy's Jackson-based drug
distributors, who left it in California after he was arrested, which McCoy
ultimately retained as a payment for a drug debt." ECF No. 699,
PageID.6849-50.

admitted. As with the other categories discussed in this motion, Defendants can point out the ambiguity or provide whatever context they wish.

### 4. Video including the phrase "we the plug"

This video has already been the subject of pretrial motion practice and, for the same reasons discussed in the Court's prior Order denying a motion to suppress this evidence, will not be excluded. *See generally*, ECF No. 520. Like the other pieces of evidence, Defendants can offer the context that they say is missing. It is not prejudicial to allow a government witness to testify to his understanding of the term "plug." As with the other evidence from White's iCloud account, this is a question of weight for the jury.

### d. Government's motion to admit statements made by Herndon during proffer session (ECF No. 706)

Robin Herndon provided information to the government under a proffer agreement. That agreement provided that the government could not use anything Herndon revealed during the proffer against him—unless he lied. The government argues that Herndon indeed lied during the proffer session, and that it should therefore now be allowed to introduce Herndon's statements against him.

A proffer agreement is a contract. *United States v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992). Thus, the terms of the agreement themselves govern what will be considered a breach. *Id.* The government bears the

21

burden of proving that the agreement has been breached and that the breach is material and substantial. *Id.* A breach of a defendant's promise to tell the truth is material if it deprives the government of the benefit of its bargain. *Id.* at 575.

The government states that in the proffer agreement, a copy of which has not been provided to the Court, Herndon agreed that lying would constitute a breach of the agreement and that his obligation to tell the truth was a material term of the proffer agreement. Herndon has not disputed this characterization of the agreement.

The government says that Herndon lied in a number of ways. They say that he claimed to have moved cash in sub-$10,000 transactions "to build credit, to develop relationships with bank employees, and to build relationships with banks." ECF No. 706, PageID.6913. He also said that he funded the $100,000 down payment of White and McCoy's home with his own savings, but later admitted that McCoy had provided him with the funds instead. *Id.* He also said that McCoy gave him the $100,000 in cash in a bag. But actually, McCoy paid at least $5,000 by cashier's check. *Id.*

Herndon also said that he only visited Baltimore because he was interested in buying real estate there, but later admitted that he picked up $10,000 in cash there for McCoy. *Id.* at PageID.6913-14. He then "claimed he agreed to pick up the money because of his preexisting

22

interest" in Baltimore real estate, and had planned and paid for the trip himself. In reality, another co-conspirator paid for the flight. *Id.*

Herndon does not dispute that he lied. Instead, he argues that "any misstatement was not material to this money laundering case." ECF No. 702, PageID.6883. He says that the essential part of his statement was the lie about where the $100,000 for the home purchase came from. *Id.* He says that the issue in the case is whether Herndon knew the funds for the down payment were drug proceeds. *Id.*

Herndon's response misses the mark. Even if the misstatement was immaterial to the indictment, the question is whether it was a material to the terms of the proffer agreement. Here, it was. Indeed, there is no real dispute that many of Herndon's statements provided during the proffer session were lies. As the government explains, because Herndon provided false statements under circumstances where he had agreed to tell the truth, the government was unable to use Herndon's testimony at all for any further investigation, and "received nothing of value" from the agreement. *See United States v. Staton*, 850 F. App'x 361, 368 (6th Cir. 2021).

A defendant who lies during a proffer session does not always materially breach her proffer agreement. If that defendant nevertheless provides significant and helpful truthful information, the government still receives the benefit of its bargain. *Fitch*, 964 F.2d at 575. Herndon

points to nothing he provided that was helpful or would have vitiated the substantial breach of his agreement.

Accordingly, the government has shown that Herndon materially breached his obligation under the proffer agreement and, therefore, his statements may be admitted.

### e. Government's motion to exclude testimony of Virgil Roberts (ECF No. 600)

The government asks the Court to exclude the testimony of Virgil Roberts, a purported expert in the music industry. The government says that it is not clear what Mr. Roberts will testify about.

Defendants, in response, explain that Mr. Roberts has extensive experience as a lawyer and executive in the music industry. He will testify to the following:

> [(1)] McCoy and White could have generated significant wealth, including United States currency, from their record label; [(2)] the use of nicknames in connection with the record label Moneygang Meal Clique is consistent with industry practice; [(3)] based upon his review of the discovery, McCoy's and White's lifestyle is consistent with the money they could have made from their record label; and [(4)] tax evasion and tax fraud is not uncommon in the music industry. Mr. Roberts will also testify that based upon the creditworthiness factors, Mccoy and White would not have qualified for a residential real estate loan at the time [the home at issue] was purchased. He will further testify that a lease-option contract is a standard alternative for persons who want to buy a home but cannot qualify for a standard lending.

24

ECF No. 697, PageID.6818.

Rule 16 of the Federal Rules of Criminal Procedure require a defendant to disclose, upon the government's request, a statement of all opinions the defendant will elicit from their expert witness, the bases and reasons for those opinions, and the witnesses qualifications. Fed. R. Crim. Pro. 16(b)(1)(C)(iii).

Defendants' response satisfies the requirements of Rule 16. And this testimony appears relevant and helpful to the jury. The government offers no reply to Defendants' response, and does not challenge Roberts's qualifications or expertise, nor the adequacy of this additional disclosure. At the hearing held on these motions, the parties indicated that they would cooperate to achieve any additional required disclosures. Accordingly, the motion to exclude Roberts's testimony will be denied.

## II.   CONCLUSION

For the reasons stated above, the government's motion to exclude the testimony of Virgil Roberts (ECF No. 600) is **DENIED**. The government's motion, if any, to admit the proffer statements of Robin Herndon (ECF No. 706) is **GRANTED**. Defendants' motion to strike certain language from the Tenth Superseding Indictment (ECF No. 693) is **DENIED**. Defendants' motion for an order requiring the government to submit a written proffer for the basis of admitting co-conspirator statements (ECF No. 694) is **DENIED**. Defendants' amended motion in

limine (ECF No. 695) is **GRANTED IN PART** and **DENIED IN PART** as described above.

      **IT IS SO ORDERED** this 17th day of July, 2023.

                        BY THE COURT:


                        /s/Terrence G. Berg
                        TERRENCE G. BERG
                        United States District Judge