UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,                             Criminal No. 17-cr-20489

v.                                             Honorable Terrence G. Berg

D-12 Teeauna White,

        Defendants.
_____/

## UNITED STATES' APPLICATION FOR ORDER OF FORFEITURE AS TO DEFENDANT TEEAUNA WHITE

Plaintiff, United States of America, by and through undersigned counsel, applies under Federal Rule of Criminal Procedure 32.2 and 18 U.S.C. § 982(a)(1) for entry of a Preliminary Order of Forfeiture against defendant Teeauna White in connection with her conviction at trial for Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h).

Specifically, the United States seeks entry of an order imposing a forfeiture money judgment against White, in favor of the United States, in the amount of $845,575. This amount represents a portion of the property involved money laundering conspiracy, including real property located at 27622 Pala Loma Court, Moreno Valley, California (the Pala Loma property), and funds paid to bank accounts and vehicles titled in White's name. It is further requested that all interest White may have in the Pala Loma property be forfeited to the United States as

property involved in the money laundering conspiracy. Upon the final forfeiture of the Pala Loma property to the United States, including the forfeiture of all third-party interests in the property, White's money judgment will be reduced to $295,575.

In accordance with Local Rule 7.1, the undersigned attorney had initial communications with Allison Kriger, counsel for defendant Teeauna White, regarding the order of forfeiture requested. The undersigned was unable to learn White's position regarding this application prior to its filing.

The United States relies on the Tenth Superseding Indictment, the evidence and exhibits presented at trial, the accompanying brief, the record in this case, and any other information presented to the Court on this matter at sentencing.

I.      **Background and Relevant Factual Basis**

Defendants Teeauna White and Robin Herndon were charged in a Tenth Superseding Indictment with Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h). (ECF No. 682). Consistent with Rule 32.2(a), the indictment contained forfeiture allegations providing notice that upon conviction of the charged offense the defendant's interest in real property located at 27622 Pala Loma Ct., Morena Valley, California, would be forfeited to the United States. (*Id.* at PageID.6400-01). The forfeiture allegation also provided notice that a forfeiture money judgment would be imposed against each defendant, in favor of the United

States, in an amount representing the value of the property involved in the offense of conviction. (*Id.*)

On August 9, 2023, at the conclusion of trial, a jury found White and Herndon guilty of the charged money laundering conspiracy. (ECF No. 720, Jury Verdict Form). As shown a trial, White played a central role in laundering Maurice McCoy's drug proceeds. As part of the money laundering conspiracy, as soon as McCoy was released from prison for a supervised release violation, he and White opened a joint business bank account for Money Gang Mealclique (MGMC); their record label and promotional company. PSR ¶ 36. At the same time, White independently opened accounts for Another Level (recording studio) and Pretty Pockets (her clothing business). *Id.* Together, White and McCoy used those accounts, and other personal accounts of hers, to launder McCoy's drug money. *Id.* ¶ 15. Pretty Pockets may have existed in some form as White's promotional and clothing business before, but when White opened all the business Wells Fargo accounts in August 2016, she started to use them to conceal McCoy's drug money. In just 14 months, almost half-a-million dollars flowed through their business and personal accounts. *Id.* ¶¶ 35-37; *see also* Trial Exhibit 63.1. At the same time, White admitted their record label wasn't making any money. *Id.* ¶ 48. She also admitted she wasn't working otherwise and hadn't in at least a year. *Id.* Meanwhile, significant amounts of cash were deposited into her bank accounts:

3



Trial Exhibit 63.1.

During the most prosperous period for the McCoy DTO, White accrued significant assets through laundered funds of the DTO, including valuable cars:



4

Trial Ex. 61. She purchased a Bentley worth more than $61,000 in 2015 and paid $9,900 down, *Id.* ¶ 44. In total, $46,354.58 was paid toward the Bentley. Trial Ex. 61. In 2017, she purchased a Mercedes Benz worth almost $100,000 and paid $15,000 down. *Id.* ¶ 45. In total, $28,274.45 was paid toward the Mercedes. Trial Ex. 61. White also supported the money laundering conspiracy when she signed for the vehicle title transfer of a 2007 Cadillac Escalade from Andre Scott to her name, for the stated amount of $1,000. PSR ¶ 46.

[Bill of sale form: Vehicle 1GYFK66867R421581, 2007 CADI, license 7TIX477; seller Andre Lee Scott to buyer Teeauna White on 8/24/2017 for $1,000; odometer 117,312; buyer's address 22985 Climbing Rose Dr. #222, Moreno Valley, CA 92557]

Trial Ex. 24, excerpt at 29.

In 2017 White and McCoy also purchased a half a million-dollar home with McCoy's drug proceeds using Robin Herndon as their nominee. PSR ¶¶ 33-34. White selected the home, was the one to receive the keys after closing, and kept the payment schedule on her phone. *Id.*; Trial Ex. 58. Although she lived there, White avoided any obvious connection to the residence. She didn't list it on her driver's license. Her multiple vehicles weren't registered there. None of the statements for the multiple bank accounts White controlled were mailed there. Her tax return after she moved in never listed it as her residence. The complex and layered financial transactions utilized to purchase the home, including 105 cash deposits totaling over $522,000 dollars, were documented in the government's trial exhibit 49.3.



Trial Ex. 49.3, excerpt (inter-account activity-2017). In total, over $550,000 was paid to the Pala Loma property. PSR ¶ 53.

The government now seeks the imposition of a $845,575 forfeiture money judgment against defendant Teeauna White to account for the value of property laundered through White's personal and business bank accounts and vehicles titled in her name, and the Pala Loma property. It is further requested that a preliminary order of forfeiture be entered forfeiting White's interest in the Pala Loma property to the United States. Upon a final order of forfeiture being entered against the Pala Loma property -- which occurs only after defendant Robin Herndon, JPC Equity Property, LLC, and other third-party interests are forfeited -- White's forfeiture money judgment shall be reduced by $550,000, leaving a balance of $295,575.

**II.    The Court Must Enter a Forfeiture Money Judgment and Preliminary Order of Forfeiture**

   **A.    Forfeiture in this Case is Mandatory Under 18 U.S.C. § 982(a)(1).**

Under 18 U.S.C. § 982 and Federal Rule of Criminal Procedure 32.2(b), forfeiture is a mandatory part of Defendant's sentence. *Libretti v. United States*, 516 U.S. 29, 39 (1995) (Criminal forfeiture is part of the sentence). Specifically, in imposing sentence on a defendant convicted of a money laundering conspiracy the court "**shall** order that the person forfeit to the United States any property, real or personal, **involved in** such offense." 18 U.S.C. § 982(a)(1) (emphasis added); *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998) (section 982(a)(1) "mandates" that property involved in or traceable to the money laundering offense be forfeited) *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989)

("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied . . .").

Rule 32.2(b) provides that if forfeiture is requested, the court must determine if the government has established the requisite nexus between the property and the offense. Fed. R. Crim. P. 32.2(b)(1)(A). In the case of a requested money judgment, "the court must determine the amount of money that the defendant will be ordered to pay" and "must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment." Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see United States v. Ponzo*, 853 F.3d 558, 589 (1st Cir. 2017) (jury not required to determine amount of forfeiture money judgment, Rule 32.2 contemplates that court shall make such determination).

### B. The Court Must Determine the Amount of the Forfeiture Money Judgment.

Procedure for the forfeiture phase of a criminal case is set forth in Federal Rule of Criminal Procedure 32.2. Under Rule 32.2, when the government is seeking a money judgment, the court must determine the amount of money that Defendant must pay. Fed. R. Crim. P. 32.2(b)(1)(A); *see United States v. Corrado*, 227 F.3d 543, 555 (6th Cir. 2000) (*Corrado I*) (the court is required to make a reasonable approximation based on the evidence in the record to establish the amount of the forfeiture judgment).

The United States has the burden of establishing the amount of the forfeiture money judgment by a preponderance of the evidence. *United States v. Smith*, 749 F.3d 465, 488 (6th Cir. 2014); *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007). In making the determination regarding forfeiture, the court may rely on evidence already in the record, including evidence introduced at trial, as well as any additional evidence or information submitted by the parties and "accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). Since forfeiture is part of sentencing, reliable hearsay may be used to satisfy the government's burden of proof by a preponderance of the evidence. Fed. R. Evid. 1101(d)(3); *United States v. Jafari*, 85 F. Supp. 3d 679, 684-85 (W.D.N.Y. 2015).

### C.    A Forfeiture Money Judgment Equals the Value of the Property Involved in the Money Laundering Conspiracy.

The Sixth Circuit has authorized the entry of forfeiture money judgments. *United States v. Hampton*, 732 F.3d 687, 691 (6th Cir. 2013) (joining the consensus view and holding that entry of the forfeiture money judgment was authorized even though the amount of proceeds subject to forfeiture exceeded the value of the defendant's assets at the time of sentencing) *see also United States v. Baker*, 227 F.3d 955, 969 (7th Cir. 2000) (court orders defendant to pay personal money judgment equal to amount of SUA proceeds defendant conspired to launder). The court must determine the amount of the money judgment. Fed. R. Crim. P. 32.2(b)(1)(A). The money judgment should equal the amount of money

9

*involved in* the money laundering conspiracy, which includes the money or other property being laundered, and any property used to facilitate the offense. *United States v. Huber*, 404 F.3d 1047, 1056, 1058 (8th Cir. 2005) ("Forfeiture under section 982(a)(1) in a money laundering case allows the Government to obtain a money judgment representing the value of all property 'involved in' the offense, including 'the money or other property being laundered [the corpus],' and 'any property used to facilitate the laundering offense'"); *United States v. Coffman*, 612 Fed.Appx. 278, 285 (6th Cir. 2015) (property to be forfeited under 18 U.S.C. § 982(a)(1) includes "the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense") (internal citation omitted). The property involved in the offense also includes "co-mingled" funds. *United States v. Jamieson*, 427 F.3d 394, 404 (6th Cir. 2005) ("When money from illegal sources is co-mingled with money from unspecified other sources, 'all such funds are attributable to the money laundering scheme.'") (internal citation omitted).

The court may make a reasonable approximation based upon the evidence in the record. *United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011) (calculation of forfeiture money judgment need not be exact; government may rely on reasonable estimates).

10

### D. A $845,575 Forfeiture Money Judgment should be entered.

Based on the evidence presented at trial, the government is requesting that a forfeiture money judgment in the amount of $845,575 be entered against White. The government calculated the requested money judgment by adding $550,000 in funds made payable to the Pala Loma property (rounded down) to the total the amount of criminal proceeds funneled to bank accounts and vehicles titled in White's name. Notably, although she was a co-signer of the MGMC Well Fargo Account with McCoy, the government excluded from its calculation the cash deposited to this account. Trial Ex. 63.1. This leaves the following calculation for the forfeiture money judgment being requested:

| Account/Vehicle | Amount | Citation |
|---|---|---|
| Another Level–Wells Fargo | $28,100 | Ex. 63.1 |
| Pretty Pockets–Wells Fargo | $62,047 | Ex. 63.1 |
| Teeauna White–Navy Federal CU | $77,340 | Ex. 63.1 |
| Teeauna White–Arrowhead CU | $52,460 | Ex. 63.1 |
| 2005 Bentley | $46,354 | Ex. 61 |
| 2017 Mercedes Benz | $28,274 | Ex. 61 |
| 2007 Cadillac Escalade | $1,000 | Ex. 24 at 29 |
| 27622 Pala Loma | $550,000 | Ex. 49.3, PSR ¶ 53 |
| **Total** | **$845,575** | |

After all third party interests are resolved if the Pala Loma property is forfeited to the United States by final order of forfeiture, White's forfeiture money judgment will be reduced by $550,000.

11

### E. White's interest in 27622 Pala Loma Court, Moreno Valley, California must be forfeited.

During trial, through testimonial and documentary evidence, 27622 Pala Loma was shown to be clearly connected to the money laundering conspiracy. PSR ¶¶ 33-34. Where a single financial transaction involved in the purchase of a home that is traceable to criminal proceeds would result in forfeiture, in this case there were well over 100, totaling over $500,000. *See United States v. Sanders*, 952 F.3d 263, 286–87 (5th Cir. 2020) (affirming forfeiture where purchase of a cashier's check that was used to buy real property was the basis for money laundering conviction and real property was thus involved in that offense). This included a showing that the initial $5,000 check to the house was purchased by McCoy. *Id.*; Trial Ex. 49.3. It was also established that McCoy DTO drug proceeds earned in Baltimore were funneled to the home by Robin Herndon:



Trial Ex. 49.6. The Pala Loma property has a clear nexus to the money laundering conspiracy and must be forfeited to the United States under 18 U.S.C. § 982(a)(1) as property involved in the offense.

### III. Conclusion

Based on the foregoing authority, the Tenth Superseding Indictment, the defendant's conviction at trial, the evidence and exhibits presented to the Court at trial, and the record in this case, the government requests entry of a forfeiture money judgment against Defendant, in favor of the United States, in the amount of $845,575. The government further requests entry of an order forfeiting to the United States any interest White may have in 27622 Pala Loma Court, Moreno Valley, California. The government will submit a proposed Order of Forfeiture via ECF Utilities prior to sentencing.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/Gjon Juncaj
Gjon Juncaj
Andrea Hutting
Craig F. Wininger
Assistant United States Attorneys
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-0209
Dated: December 18, 2023     gjon.juncaj@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2023, the United States' Application for Order of Forfeiture as to Defendant Teeauna White was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

s/Gjon Juncaj
Gjon Juncaj
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-0209
gjon.juncaj@usdoj.gov
